[No. B016340. Second Dist., Div. Three. Aug. 28, 1986.]

CITY OF SOUTH GATE et al., Plaintiffs and Appellants, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT,
Defendant and Respondent.

1418

**COUNSEL**

Bruce M. Boogard, City Attorney, Wagner, Sisneros & Wagner and John L. Wagner for Plaintiffs and Appellants.

McCutchen, Black, Verleger & Shea, G. William Shea, Peter W. James, David T. Peterson, Linda J. Bozung, Michael M. Johnson and Jerry Halverson for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiffs and appellants City of South Gate, Carmen Cordero, Amelia Mc Bride and John Trujillo (appellants) appeal from a superior

court judgment denying their petition for a writ of mandate against defendant and respondent Los Angeles Unified School District (District).

Because the project undertaken by the District which resulted in a pupil attendance boundary adjustment (boundary adjustment) is not covered by the California Environmental Quality Act (CEQA), the trial court did not err in finding the District was not required to prepare an environmental impact report (EIR).[1]

### PROCEDURAL AND FACTUAL BACKGROUND

In accordance with their interpretation of the District's project and CEQA, appellants sought a writ of mandate in the Los Angeles Superior Court to compel the District to comply with CEQA and prepare an EIR prior to the District's implementation of a boundary adjustment between South Gate and Jordan High Schools.

Factually, the District has over 560,000 students and 600 schools, encompassing over 700 square miles and all or part of 11 incorporated cities, including South Gate. Pursuant to a study conducted by the Director of the District's School Facilities and its CEQA officer Byron L. Kimball (Kimball), it was determined that the District has a severe overcrowding problem, particularly in schools with large Hispanic enrollments. Boundary adjustments are frequently necessary to distribute student population over the District so as to relieve school overcrowding.

South Gate High School is one of the District's most overcrowded schools. A year-round schedule and 18 portable classrooms were installed. Despite these measures, the number of students at South Gate High School exceed a court-ordered ceiling of 3,000. Further, District projections indicate more than 4,000 pupils will be in the South Gate High School attendance area by 1988. In contrast, Jordan High School, the high school closest to South Gate High School and approximately two miles distant, has a substantial excess capacity.

---

[1]Under CEQA (Pub. Resources Code, § 21000 et seq.), "any public agency directly undertaking a project which may have a significant effect on the environment must first conduct a threshold study of such impact. If the study shows that the project will not have a significant effect, the agency may so declare in a brief negative declaration; if it demonstrates that the project may have a significant effect, the agency must prepare an environmental impact report." (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 794 [187 Cal.Rptr. 398, 654 P.2d 168].)

Project is defined as: "(a) Activities directly undertaken by any public agency." (Pub. Resources Code, § 21065.)

Consistent with these findings, Kimball drafted a resolution concerning a boundary adjustment, which resolution was adopted. Thereafter, in the spring of 1985, the District made a boundary adjustment between South Gate and Jordan High Schools, providing for a three-year phase-in transfer of approximately 600 students. This accommodation precluded the necessity for construction of any new and/or additional facilities.

Kimball prepared a discretionary statement of exemption on behalf of the District in the belief the boundary adjustment was not a project subject to CEQA.

The trial court denied appellants' petition, ruling in accordance with the District's position that the boundary adjustment did not constitute a project under CEQA and an EIR therefore was not mandated.

Appellants filed a petition for a writ of mandate in this court seeking the same relief. The writ was denied because an adequate remedy at law was available in the right of appeal.[2] This appeal followed.

### DISCUSSION

1. *Judicial review.*

■ Appellants' writ action is one appropriately sought under Code of Civil Procedure section 1085, under which a writ may issue to compel the performance of an act the law specially enjoins.[3]

The boundary adjustment action by the District was quasi-legislative in nature because it created guidelines to implement a statute or public policy. (8 Witkin, Cal. Procedure, *supra,* Extraordinary Writs, § 250, p. 873; see, e.g., *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 613 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 279-281 [63 Cal.Rptr. 889].)

---

[2]Code of Civil Procedure section 1064 states in pertinent part: "A judgment in a special proceeding is the final determination of the rights of the parties therein." Code of Civil Procedure section 1110 makes the statutes on appeal applicable to writ actions except where they are inconsistent with writ statutes. Thus, because an appeal is the regular and adequate remedy, a reviewing court will usually decline to consider a new and independent application of the same writ. (*L. A. Surety Co., Inc.* v. *Municipal Court* (1931) 111 Cal.App. 133, 135 [295 P. 591]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 208, p. 834.)

[3]Code of Civil Procedure section 1085 provides in pertinent part: "It [a writ of mandate] may be issued by any court, . . ., to any inferior tribunal, . . ., to compel the performance of an act which the law specially enjoins, . . ."

### a. *Trial court review standard.*

█ When an agency's quasi-legislative action raises an issue as to whether CEQA is applicable, review is pursuant to section 21168.5 of the Public Resources Code (section 21168.5). (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d at pp. 794-795, fn. 14.) Section 21168.5 provides where no administrative hearing is required, which is the case here, judicial review is limited to whether the agency proceeded in a manner required by law and whether the decision is supported by substantial evidence.[4] (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74-75, fn. 3 [118 Cal.Rptr. 34, 529 P.2d 66].)

### b. *Appellate court standard.*

█ In an appeal from the denial of a petition for a Code of Civil Procedure section 1085 writ, the trial court's finding on foundational matters of fact would be conclusive on appeal. (*Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 387 [146 Cal.Rptr. 892].) "[T]he ultimate questions, whether the agency's decision was arbitrary, capricious or entirely lacking in evidentiary support, contrary to established public policy or unlawful or procedurally unfair, are essentially questions of law. With respect to these questions the trial and appellate courts perform essentially the same function, and the conclusions of the trial court are not conclusive on appeal." (*Ibid.*)

When an agency determines whether an action constitutes a project within the purview of CEQA, as here, such action presents a question of law which can be decided on the undisputed factual information in the record on appeal, and thus no issue of deference to agency discretion or review of substantiality of evidence is before this court. (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d at pp. 794-795.)

### 2. *Theories of resolution.*

The comprehensive and complicated CEQA scheme found both in the Public Resources Code section 21000 et seq. and the California Administrative Code, title 14, Resources Agency, section 15000 et seq. does not definitively address the specific issue here. █ Of necessity therefore,

---

[4]Section 21168.5 provides in pertinent part: "In any action . . ., to . . ., review, . . . a determination, . . . of a public agency on the grounds of noncompliance with this division, the inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination . . . is not supported by substantial evidence."

we must reasonably interpret the various sections in the light of the apparent purpose of CEQA. The interpretation must be practical rather than technical and lead to a wise policy rather than mischief or absurdity. (*City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].) Once the purpose of the legislation has been ascertained, it must be given effect even though it may not be consistent with the strict letter of a statutory provision. (*English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 233 [138 Cal.Rptr. 634].)

Preliminarily, we note the District is an agency that must comply with CEQA where it is applicable. (See Pub. Resources Code, §§ 21002-21003, 21061-21063.) Public Resources Code section 21080, subdivision (a), provides in pertinent part that CEQA is applicable to "projects proposed to be carried out or approved by public agencies, . . ."

We are also aware that "'[i]n CEQA, the Legislature sought to protect the environment by the establishment of administrative procedures drafted to "Ensure that the long-term protection of the environment shall be the guiding criterion in public decisions." (Pub. Resources Code, § 21001, subd. (d).) To achieve these objectives, CEQA and the guidelines issued by the State Resources Agency to implement CEQA establish a three-tiered structure. ▆▆ If a project falls within a category exempt by administrative regulation . . ., or "it can be seen with certainty that the activity in question will not have a significant effect on the environment" . . ., no further agency evaluation is required. If there is a possibility that the project may have a significant effect, the agency undertakes an initial threshold study . . .; if that study demonstrates that the project "will not have a significant effect," the agency may so declare in a brief Negative Declaration. . . . If the project is one "which may have a significant effect on the environment," an EIR is required.'" (*Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400, 413 [124 Cal.Rptr. 339].)

Thus, public actions have been excluded and/or exempted as projects under both CEQA and its guidelines, and no EIR is therefore required.

a. *District action exempt under California Administrative Code, title 14, section 15378, subdivision (b)(5) (section 15378).*

▆▆ The District's action creating the boundary adjustment is not a project requiring an EIR because it is exempt under CEQA guidelines located in the California Administrative Code, title 14, section 15378, subdivision (b)(5), which was enacted in July 1983. This section states a project does *not* include the closing of a public school and the transfer of students to

another school where the only physical changes involved are categorically exempt.[5]

One categorical exemption found in the CEQA guidelines in the California Administrative Code, title 14, is section 15314 (section 15314). This exemption permits minor additions to existing schools which additions do not increase original student capacity by more than 25 percent without such action becoming a project requiring an EIR.[6]

Section 15378, subdivision (b)(5) as a guideline was promulgated following the decision in *Prentiss* v. *Board of Education* (1980) 111 Cal.App.3d 847 [169 Cal.Rptr. 5], and the section actually includes the citation of the case.

In *Prentiss*, a school district decided to close an elementary school and transfer its students to another school less than one mile away. (*Prentiss* v. *Board of Education, supra,* at pp. 849-850.) As in the instant case, residents and taxpayers of the school district unsuccessfully sought a writ challenging the action. (*Id.,* at pp. 848-849.)

In *Prentiss*, approximately $278,000 was expended on facility rehabilitation and construction at the receiving school. However, the court held such action was not a project subject to the requirements of CEQA because it was not a step in the development of a new and different use, nor would it result in the termination or disruption of existing services which would have a substantial adverse impact on the environment. (*Id.,* at pp. 850-854.)

*Prentiss* thus allowed a school closure, the transfer of students, and minor physical changes on the receiving school to be accomplished without the action being deemed a project under CEQA.

If a school closure and transfer of students to a nearby school undergoing resultant necessary, minor physical changes is exempt, surely the boundary adjustment here is also exempt. The impact on the environment is even less where no school closure results and no remedial construction is required.

---

[5]Section 15378, subdivision (b)(5) states: "Project does not include: [¶] . . . . [¶] (5) The closing of a public school and the transfer of students to another school where the only physical changes involved are categorically exempt. (*Prentiss* v. *Board of Education,* 111 Cal.App.3d 847 [169 Cal.Rptr. 5]; But see, *Fullerton Joint Union High School District* v. *State Board of Education* [*supra,* 32 Cal.3d 779, 796, fn. 16].)"

[6]Section 15314 provides: "Class 14 consists of minor additions to existing schools within existing school grounds where the addition does not increase original student capacity by more than 25% or ten classrooms, whichever is less. The addition of portable classrooms is included in this exemption."

The only physical change between Jordan and South Gate High Schools as contemplated by sections 15378 and 15314 is the phased-in transfer of some 600 students. Jordan High School has an original student capacity of 1,935 but has only 1,110 students enrolled as of 1984-1985, and is able to accommodate the number of transferring students without exceeding Jordan High School's capacity by 25 percent.

The District's boundary adjustment is therefore exempt under section 15378 which incorporates section 15314.

b. *The District's project is excluded under Public Resources Code section 21080.18 (section 21080.18).*

■■■ Another basis for determining the boundary adjustment does not constitute a project is section 21080.18, enacted in 1984. It directs: "This division [division 13 of the Public Resources Code covering CEQA] does not apply to the *closing* of any public school in which kindergarten or any of the grades 1 through 12 is maintained." (Italics added.)

The trial court relied on this section in denying appellants' petition. It reasoned that the mere transfer of students from one school to another by a boundary adjustment is of lesser impact than a closure of an entire school, and, therefore, because "the greater included the lesser," section 21080.18 must of necessity exclude the transfer of students. We find the trial court's interpretation reasonable. A transfer of students to a nearby existing school would have little or no significant effect on the environment.

Prior to the passage of section 21080.18 and subsequent to the decision in *Prentiss,* the Supreme Court decided *Fullerton Joint Union High School Dist. v. State Bd. of Education, supra,* 32 Cal.3d 779, on which appellants rely. However, their reliance is misplaced.

*Fullerton* involved creation of a *new* unified school district, based on the division of territory of an existing high school district. (*Id.,* at p. 784.) The *Fullerton* court held the secession from one school district and the creation of another, would "likely require the *construction* of a new high school" and might "result in abandonment of some facilities" (*id.,* at p. 794, italics added), and therefore, such a *massive reorganization* was governed by CEQA. (*Id.,* at p. 798.)

Also, in a footnote, the *Fullerton* court questioned the *Prentiss* decision to the effect that a school closure was not a project. *Fullerton* noted while it was unlikely the closure of a single elementary school would have a

significant environmental impact, "the possibility cannot be rejected categorically." (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* at p. 796, fn. 16.)

However, in the chronology of events, it is to be remembered that shortly after the conflicting decisions in *Prentiss* and *Fullerton,* the Legislature enacted in 1984 the school closure exclusion of section 21080.18. This statute thus expressly approved the *Prentiss* position and rejected the contrary suggestions found in *Fullerton.* Legislative history of section 21080.18 submitted to the trial court herein indicates the reorganization of school districts was purposely excluded.

The instant case is not at all like the major school district reorganization and building program that took place in *Fullerton.* Nor is the District's boundary adjustment as intrusive as the school closure and transfer held not to be a project in *Prentiss.* ■ Where action does not amount to a project, there is no occasion to prepare even a negative declaration or an EIR. (*Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal.App.3d 648, 663 [124 Cal.Rptr. 635].)

■ The enactment of section 21080.18 thus provides statutory grounds for excluding the District's action from the application of CEQA.

3. *This is not a "public controversy" as defined by CEQA.*

■ Appellants argue an EIR is mandated because the District's action caused great public controversy. However, the cases discuss public controversy as related to an *environmental* or *ecological* impact. (See *No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d at pp. 85-86.)

Public Resources Code section 21082.2, subdivision (a) states: "The lead agency shall determine whether a project may have a significant effect on the *environment* based on substantial evidence in the record. The existence of public controversy over the *environmental effects* of a project shall not require preparation of an environmental impact report if there is no substantial evidence before the agency that the project may have a significant effect on the *environment.*" (Italics added.)

California Administrative Code, title 14, section 15064, subdivision (h) in pertinent part adds: "(h) In marginal cases where it is not clear whether there is substantial evidence that a *project* may have a significant effect on the environment, the lead agency shall be guided by the following factors: [¶] (1) If there is serious public controversy over the *environmental effects*

of a *project,* the lead agency shall consider the effect or effects subject to the controversy to be significant and shall prepare an EIR. *Controversy unrelated to an environmental issue does not require preparation of an EIR.''* (Italics added.)

Therefore, the issue of public controversy is only to be taken into consideration in marginal cases where it is not clear whether significant environmental effects will occur, but in all situations, the public controversy must relate to an environmental issue. This is not the case before us as found by the trial court, and which factual finding is binding. (*Lewin* v. *St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d at p. 387.) No closure or construction will take place because of the boundary adjustment and the attendance area is in fact closer to Jordan High School than to South Gate High School.

In this area, the statutory scheme is clear in that California Administrative Code, title 14, section 15064, subdivision (h)(1), *specifically* states that a public controversy *unrelated* to an environmental issue does not necessitate preparation of an EIR. The public controversy the appellants refer to here has nothing to do with significant environmental effects, but addresses the admittedly serious social and educational effects of the boundary adjustment. However, these concerns are not governed by CEQA. (See, e.g., *No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d at pp. 85-86.)

CONCLUSION

Under sections 21080.18, 15378, subdivision (b)(5) and section 15314, the pupil attendance boundary change is not a project subject to CEQA and thus does not require the preparation of an EIR. Moreover, there is no public controversy related to an environmental issue that mandates the preparation of an EIR.

DISPOSITION

The judgment is affirmed.

Lui, J., and Herrington, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.