[No. B066615. Second Dist., Div. Six. Apr. 15, 1993.]

STEVEN C. LEE et al., Plaintiffs and Appellants, v.
CITY OF LOMPOC et al., Defendants and Respondents;
DIVERSIFIED SHOPPING CENTER, Real Party in Interest and
Respondent.

COUNSEL

Davis, Cowell & Bowe, Steven L. Stemerman and Marjorie M. Alvord for Plaintiffs and Appellants.

David H. Hirsch, City Attorney, and Sharon D. Stuart, Deputy City Attorney, for Defendants and Respondents.

Rutan & Tucker, Michael D. Rubin and S. Daniel Harbottle as Amici Curiae on behalf of Defendants and Respondents.

Stradling, Yocca, Carlson & Rauth, E. Kurt Yeager, Ronald A. Van Blarcom and David H. Mann for Real Party in Interest and Respondent.

OPINION

STONE (S. J.), P. J.—Does the California Environmental Quality Act apply to a city council's decision to call for a special election to have the electorate decide whether to amend a general plan and zoning ordinance? We hold it does not.

Steven C. Lee and Anthony Marvin Armas appeal from a judgment denying issuance of a writ of mandate. They brought this action to challenge the adequacy of environmental review for the Diversified Shopping Center Project (DSC Project). This project required dedication to commercial uses of a significant portion of the City of Lompoc's Central Avenue Specific Plan (CASP), previously set aside for industrial and business park purposes but being used for agricultural purposes. The city had an environmental impact report (EIR) prepared upon which public hearings were held. Appellants opposed the project at various proceedings before the city's planning commission and city council on both the EIR and the project itself. The planning commission recommended denial of the amendments being considered by the city in conjunction with the DSC Project. After certifying the final EIR as complete, the city council deadlocked on the proposed land use amendments. To resolve the impasse, the city council submitted to the voters at a special election whether to amend the designated land use to allow commercial development. (Elec. Code, § 4017.)[1]

After the electorate voted to adopt the proposed changes to the general plan, CASP, and the zoning ordinance, appellants filed a petition for writ of

[1]The question presented to the voters was as follows: "Shall Ordinance No. 1346(91) and Resolution Nos. 4046(91) and 4057(91) be adopted to change the General Plan, Central Avenue Specific Plan and Zoning Ordinance for property located north of Central Avenue between L Street and O Street ("Diversified Shopping Center parcel" APN 93-450-22), and

mandate. They sought an order commanding the city to set aside the approval and certification of the EIR for the DSC Project made pursuant to the California Environmental Quality Act (CEQA), as well as the special election called regarding the general plan, CASP, and zoning ordinance changes necessary to the DSC Project.

Appellants asserted that the EIR was inadequate in its description of land use amendments, in its consideration and description of project alternatives and implications of rezoning, and in its failure to consider the potential industrial uses for which the area was currently zoned. They also alleged an invalid election.

The trial court determined that the decision of the electorate "is the paramount authority and cannot be diluted by judicially adding on additional requirements." The court found two aspects to the present controversy: the first involves the applicability of CEQA to the general plan, specific plan and zoning changes where the electorate has taken part and the second involves the requirement that the particular shopping center project comply with CEQA if the land use is changed. The court found that CEQA did not apply to the electorate's approval of the land use changes but did apply to the ultimate development project after zoning changes have been made.

The court also found that the alleged errors in the election process and discrepancies in the proposed ordinances and resolutions were not of such substantial nature to require voiding the election and denied the petition.

### Discussion

1. *Applicability of CEQA to Council-initiated Ballot Measures Regarding Land Use Changes.*

Appellants assert that the city's environmental review obligations under the CEQA (Pub. Resources Code, § 21000 et seq.) were not vitiated when the city's legislative body called a discretionary election under Elections Code section 4017. They contend that where holding of the election is part of a project affecting the environment and is subject to discretionary approval by the public agency, CEQA compliance is required before a valid plebiscite may be held. According to appellants, the discretionary act of placing the matter on the ballot was a first step or prerequisite to approval of the construction project.

the two parcels located at the northeast corner of Central Avenue and L Street (Central Plaza II parcels" APN 93-450-30 and -31) in order to allow commercial development and uses on these parcels?"

■ Both initiative and referendum powers have been held applicable to zoning ordinances. (*Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531, 539 [277 Cal.Rptr. 1, 802 P.2d 317].) Courts must resolve all doubts in favor of the people's exercise of this power. (*Ibid.*)
■ However, the policy of upholding elections will be invoked only where irregularities were merely incidental to the result, but not where " 'the fair expression of popular will' " was prevented. (*Canales* v. *City of Alviso* (1970) 3 Cal.3d 118, 127 [89 Cal.Rptr. 601, 474 P.2d 417].)

Balanced against our reluctance to set aside lightly the results of an election is the recognition of the legislative intent underlying CEQA.
■ " 'The foremost principle under CEQA is that the Legislature intended the act "to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." ' " (*Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 563-564 [276 Cal.Rptr. 410, 801 P.2d 1161].) The EIR is a document of accountability; if CEQA is scrupulously fulfilled, the basis upon which responsible officials either approve or reject environmentally sensitive actions is revealed to the public. (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 391, fn. 2 [253 Cal.Rptr. 426, 764 P.2d 278].)

■ CEQA applies only to ". . . discretionary projects proposed to be carried out or approved by public agencies, including, but not limited to, the enactment and amendment of zoning ordinances, the issuance of zoning variances, the issuance of conditional use permits and the approval of tentative subdivision maps . . . ." (Pub. Resources Code, § 21080, subd. (a).)[2] Section 21080 does not apply to ministerial projects proposed to be carried out or approved by public agencies or projects which a public agency rejects or disapproves. (§ 21080, subd. (b)(1) & (5).)

"Project" as it pertains herein can be either "(a) Activities directly undertaken by any public agency" or "(c) Activities involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065.) The secretary of the resources agency by authority of section 21083 has adopted regulations for interpreting CEQA (Cal. Code Regs., tit. 14, § 15000 et seq., hereinafter referred to as "Guidelines.") Guidelines section 15378 interprets "Project" to mean "the whole of an action, which has a potential for resulting in a physical change in the environment, directly or ultimately," and includes enactment and amendment of zoning ordinances, and the adoption and amendment of local

[2]All statutory references hereinafter are to the Public Resources Code unless otherwise specified.

general plans or elements thereof pursuant to Government Code sections 65100-65700. "Project," under the Guidelines, does not include "The submittal of proposals to a vote of the people of the state or of a particular community. (*Stein* v. *City of Santa Monica* [1980] 110 Cal.App.3d 458 [168 Cal.Rptr. 39].)" (Guidelines § 15378, subd. (b)(4).)

In *Stein* v. *City of Santa Monica* (1980) 110 Cal.App.3d 458 [168 Cal.Rptr. 39], the issue was whether CEQA applied to an urban rent control initiative charter amendment. The appellate court held that the act of placing an initiative measure on the ballot in response to a citizen's petition is not a "project" contemplated by CEQA. *Stein* stated that "public agency," as defined in section 21063, includes "city" but does not include the electorate itself. The court held that since Government Code section 34461 provided that the city " '. . . shall submit the amendment . . . to the electors,' " if the petition had the requisite number of signatures, the procedure employed in amending the charter involved no discretionary activity directly undertaken by the city. "The acts of placing the issue on the ballot and certifying the result as a charter amendment qualifies as a nondiscretionary ministerial act not contemplated by CEQA." (110 Cal.App.3d 458, 461; accord, *Northwood Homes, Inc.* v. *Town of Moraga* (1989) 216 Cal.App.3d 1197, 1206 [265 Cal.Rptr. 363].)

Appellants contend that there is a distinction between elections brought about by citizens' initiative (Elec. Code, § 4011) and elections brought about by "voluntary referendum," i.e., by the public agency's calling for a special election (Elec. Code, § 4017). Respondents, to the contrary, contend the trial court was correct in finding that ballot measure by initiative, as opposed to ballot measure proposed by a local governmental body, is a distinction without a difference. Appellants rely on *People* ex rel. *Younger* v. *Local Agency Formation Com.* (1978) 81 Cal.App.3d 464 [146 Cal.Rptr. 400] and *Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779 [187 Cal.Rptr. 398, 654 P.2d 168], disapproved on other grounds in *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 918 [13 Cal.Rptr.2d 245, 838 P.2d 1198], for the proposition that CEQA applies where agency-initiated elections occur.

*Younger*, which was distinguished in *Stein*, involved a proposed deannexation of a portion of San Diego. The Local Agency Formation Commission (LAFCO) determined that an EIR was not required and filed a negative declaration. (81 Cal.App.3d 464, 470.) The trial court issued a writ compelling LAFCO to set aside its negative declaration and to prepare and consider an EIR.

On appeal LAFCO contended that the deannexation petition was not a "project" under CEQA because (1) it was exempt since it was the submittal

of a proposal to a vote of the people, (2) it was not an activity " 'directly undertaken by any public agency' " within the meaning of section 21065, subdivision (a), and (3) LAFCO's consideration of the proposed exclusion was not an activity " 'involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use . . . .' " (81 Cal.App.3d at p. 472.) The reviewing court disagreed. It found that LAFCO approval of an annexation was a "project" under CEQA. (*Id.*, at p. 479, citing *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263 [118 Cal.Rptr. 249, 529 P.2d 1017].) "The 'project' here is more than the 'submittal of proposals to a vote of the people.' Rather, it is but the first step required by statute on a deannexation proposal with consequent substantial impact on the physical and human environment. A deannexation proposal requires voter approval *only after initial decision by LAFCO and LAFCO approval.* If LAFCO disapproves the deannexation proposal, it cannot come to a vote." (81 Cal.App.3d at p. 479, italics added.) The court concluded that the exemption for submittals of proposals to a vote of the people had no application where the Government Code expressly delegated the duty to LAFCO to make its decision on such project. (*Id.*, at p. 479.)

In *Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d 779, the California Supreme Court dismissed the argument that the state board's approval of a secession plan of a school district was not a project within the purview of CEQA merely because further decisions must be made. (32 Cal.3d 779, 795.) The court also dismissed the argument that the board's approval was exempt from CEQA because that approval must be ratified by the voters, citing *Younger.* (*Id.*, at p. 796.) It held that, as a practical matter, the state board approval of the secession plan was an essential step leading to ultimate environmental impact, i.e., the construction of a new high school in Yorba Linda and consequent changes in the remaining portion of the Fullerton High School District. (*Id.*, at p. 797.) Consequently, the initial environmental study of the effect of detaching Yorba Linda from the Fullerton High School District should have been undertaken before the state board approved the Plan and submitted it to the voters. (*Id.*, at p. 798.)

Appellants argue that the City Council exercised its discretion in placing the matter on the ballot and in preparing the necessary resolutions. It is not disputed that the city council's approval of the project would have triggered review under CEQA. That is why the city council had an EIR prepared. However, it is precisely the inability of this body to reach a decision that caused them to place the matter on the ballot. Since "public agency," as used in section 21063, does not include the electorate itself, when the city council placed the matter on the ballot, it was deferring to the will of the people.

Although the council exercised discretion in placing the matter on the ballot, it did not approve the project. To hold that whenever a public agency or governing body utilizes the "voluntary referendum" of Elections Code section 4017 (see *Lawing* v. *Faull* (1964) 227 Cal.App.2d 23, 34 [38 Cal.Rptr. 417]), a prerequisite is a review under CEQA could interfere with the electorate's ability to vote on the matter. Guidelines section 15378 subdivision (b)(4) does not distinguish between submittal of ballot measures by a public agency from those submitted by voter initiative petitions.

Guidelines section 15378 subdivision (b)(4) was promulgated in 1973 and has never been amended, only renumbered from 15037 to 15378. Section 21065 has been in law since 1972 without change. There is a strong presumption that the administrative interpretation set forth in the CEQA Guidelines is consistent with legislative intent. (*Thornton* v. *Carlson* (1992) 4 Cal.App.4th 1249, 1257 [6 Cal.Rptr.2d 375].) The Guidelines are to be given "great weight" in interpreting CEQA statutory provisions. (*Laurel Heights Improvement Assn.* v. *Regents of University of California, supra*, 47 Cal.3d 376, 391, fn. 2.)

For example, the Guidelines have been used to interpret CEQA sections where the code sections were silent. In *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 525-530 [160 Cal.Rptr. 907], the court looked to the definition of "project" set forth in the CEQA Guidelines to determine whether a general plan amendment was a project under CEQA where the Guidelines expressly so provided but section 21065 did not specifically list it as a project. Since the Guidelines have always defined project to include general plan amendments and since the Legislature never disturbed that administrative interpretation, the court gave great weight to it and accepted its definition of project.

 Guidelines section 15378 subdivision (b)(4) defines project to exclude submittals of proposals to a vote of the people, and does not distinguish between ballot measures initiated by petition and those initiated by council referral. In fact, a ballot measure may be initiated by council referral at the specific request of concerned citizens. Moreover, the council's submission of a ballot measure to a vote of the electorate where the Council itself did not approve it does not constitute an "approval" of the measure by a public agency. Under CEQA, "approval" means the decision by a public agency which commits the agency to a definite course of action regarding a project. The city council's resolution to place the matter on the ballot did not constitute an "approval" under CEQA because it did not commit the council to a definite course of action. (See *Stand Tall On Principles* v. *Shasta Union High Sch. Dist.* (1991) 235 Cal.App.3d 772, 781

[1 Cal.Rptr.2d 107].) The city council's further action was expressly contingent on the results of the vote. (Cf. *People* ex rel. *Younger, supra,* 81 Cal.App.3d 464, 479, where the voters' approval was contingent upon LAFCO's initial approval.)

The preparation of an EIR is futile if that EIR is not adequately considered by the public agency responsible for approving a project. (*Village Laguna of Laguna Beach, Inc.* v. *Board of Supervisors* (1982) 134 Cal.App.3d 1022, 1035 [185 Cal.Rptr. 41].) When an EIR is required for a project, Guidelines § 15090 requires the "lead agency" to certify that the final EIR has been completed in compliance with CEQA, and that the EIR was presented to the decisionmaking body of the lead agency and that the decisionmaking body reviewed and considered the information contained in the final EIR prior to approving the project. There is no way a lead agency could certify that the electorate considered the information in the EIR prior to approving the project.

In a similar setting, the California Supreme Court has held inapplicable to initiative measures certain findings required by Government Code section 65863.6. That section mandates that a city or county consider the effects of ordinances adopted pursuant to that chapter on the housing needs of the region and balance these needs against the public service needs of the residents and available fiscal and environmental resources. "To hold otherwise would place an insurmountable obstacle in the path of the initiative process and effectively give legislative bodies the only authority to enact this sort of zoning ordinance." (*Building Industry Assn.* v. *City of Camarillo* (1986) 41 Cal.3d 810, 824 [226 Cal.Rptr. 81, 718 P.2d 68].)

Futhermore, assuming the citizens placed a matter on the ballot by initiative and the local governing body wished to place on the ballot an alternative measure for the voters' consideration, the initiative measure would not be subject to CEQA but, under appellants' theory, the measure placed by the local governing body would.[3] The voters would be able to vote on the citizens' initiative measure, but the legislative body's possible alternative would be held up pending the CEQA process. Thus, the city council's referral of the ballot measure to the electorate was not subject to CEQA.

We also reject appellants' argument that the trial court improperly split environmental review of the project by deciding that the city could "avoid" any environmental analysis of the zone change. (See *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d 263, 283-284.) The trial court correctly

---

[3]The electorate is allowed to choose between conflicting proposals. (See *Concerned Citizens* v. *City of Carlsbad* (1988) 204 Cal.App.3d 937, 942-943 [251 Cal.Rptr. 583].)

held that CEQA compliance would be required when a precise development plan for the shopping center was presented to the city.

## 2. *Election Not Invalid Due to Any Inadequacies in the EIR.*

 Appellants assert that the faulty EIR infected the election results because the ballot argument in favor of the measure indicated compliance with CEQA. Courts should uphold an election if at all possible and will do so where technical errors or irregularities do not affect the result. (*Rideout* v. *City of Los Angeles* (1921) 185 Cal. 426, 430 [197 P. 74]; *Salazar* v. *City of Montebello* (1987) 190 Cal.App.3d 953, 958-959 [235 Cal.Rptr. 708].) There is a presumption that a city's amendment to the general plan and the initiative measure amending the plan are valid. (*Garat* v. *City of Riverside* (1991) 2 Cal.App.4th 259, 292 [3 Cal.Rptr.2d 504].)

 Since we hold that CEQA did not apply to the election herein, appellants must show that the voters were so misled that the actions of the city interfered with the public interest and the will of the people. In other words, they must show that the misconduct alleged actually affected the *result* of the election. (See *Canales* v. *City of Alviso*, *supra*, 3 Cal.3d 118, 130.) They have failed to do so. The alleged weakness in the EIR concerning insufficient discussion of alternative sites and failure to discuss the difference in consequences of a business park compared to commercial development, in the trial court's words, ". . . are not the kind of informational blockbusters which would be expected to affect the lay voter."

The judgment is affirmed. Costs to respondents.

Gilbert, J., and Yegan, J., concurred.