[No. D057304. Fourth Dist., Div. One. May 12, 2011.]

ROSA MARIA HARO et al., Plaintiffs and Appellants, v.
CITY OF SOLANA BEACH et al., Defendants and Respondents.

544

**COUNSEL**

Affordable Housing Advocates and Catherine A. Rodman for Plaintiffs and Appellants.

Burke, Williams & Sorensen, Thomas B. Brown, Matthew D. Visick, John J. Welsh; McDougal, Love, Eckis, Boehmer & Foley, Johanna N. Canlas; Goldfarb & Lipman and Barbara E. Kautz for Defendants and Respondents.

**OPINION**

**HALLER, J.**—In April 2008, the City of Solana Beach (City) determined a mixed-use development proposal was inconsistent with certain local zoning

and specific plan requirements, and directed the project's proponents to redesign the project. About 16 months later, on September 2, 2009, plaintiffs Rosa Maria Haro and Carlos Ibarra filed a petition for writ of mandate and a complaint, alleging the City's actions violated state laws pertaining to affordable housing and land use. The trial court sustained the City's demurrer to plaintiffs' first amended complaint without leave to amend, concluding plaintiffs' claims were untimely and the complaint failed to state a cause of action (except for one claim).

On appeal, plaintiffs contend the court erred in determining their claims were governed by the 90-day limitations period in Government Code section 66499.37, and the court instead should have applied the one-year period set forth in Government Code section 65009, subdivision (d).[1] We conclude that even assuming plaintiffs are correct that section 65009(d) applies, their action is untimely because they filed their action more than one year after the limitations period commenced.

## FACTUAL AND PROCEDURAL BACKGROUND

Because we are reviewing a judgment after a demurrer, we summarize the facts based on the allegations of the first amended complaint and documents that were properly the subject of judicial notice. (See *Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 74 [114 Cal.Rptr.3d 887].)

In 2004, certain owners/developers (developers) proposed to build a mixed-use development at the location of the Solana Beach train station. This proposed development, known as the Cedros Crossing project, included offices, restaurants, retail businesses, parking, and 141 residential units, 14 of which would be affordable to lower income households.

While the developers were seeking the necessary permits for the project, in August 2006 the City adopted its revised housing element (Housing Element), a required part of the City's general plan. The Housing Element contains policies to provide for the City's regional housing needs, determined to be 131 total units, including 52 units for persons with low or very low incomes.[2]

---

[1] All statutory references are to the Government Code, unless otherwise specified. For ease of reference, we omit the word "subdivision" when referring to section 65009, subdivision (d) (section 65009(d)).

[2] Under state law, a state administrative agency determines the existing and projected need for housing for each region. (See *Fonseca v. City of Gilroy* (2007) 148 Cal.App.4th 1174, 1186, fn. 8 [56 Cal.Rptr.3d 374] (*Fonseca*).) A locality's share of regional housing need includes the need "of persons at all income levels," including very low incomes and lower incomes as defined in the statutes. (§ 65584, subds. (a)(1), (e).)

Two aspects of the City's Housing Element are relevant to plaintiffs' claims.

First, the Housing Element identifies nine separate sites that have the potential for residential development. "Site 8," the area that includes the Solana Beach train station, was identified for a possible mixed-use development. The Housing Element states that Site 8 "will be a key to the City's ability to meet not only its regional share for new construction but also its quantified objectives by income category. The 131 proposed rental unit mixed use development also has a set aside for 13 lower income units. This project will come before the City Council within the first year of the Housing Element cycle. Environmental documentation is complete and the City Council will consider the proposal in Fall 2006. The proposal enjoys significant City and public support. Although this one project single-handedly could address the City's regional share objectives, the City has included a program to begin a process to identify future mixed-use, higher density sites in order to strategically position the City for the next Housing Element cycle (2010–2015) and as a potential source of additional housing separate from the [transit] site."

Second, the City's Housing Element identifies "Program 1," which consists of a plan to implement various "activities to encourage mixed-use development." These activities include conducting meetings with the community and developers, reviewing potential federal and state housing financing and subsidy programs, and working to increase developer awareness of the potential for mixed-use development.

In December 2006, the City submitted its Housing Element to the state Department of Housing and Community Development (State Housing Department), the state agency responsible for approving housing elements. The next month, the State Housing Department found the Housing Element in compliance with state law, "conditioned on the approval of" several factors, including a development application for Site 8 for 131 units, including 13 affordable units, and the successful implementation of Program 1 to encourage residential capacity in mixed-use developments.

During the next year, the City held numerous public hearings on the proposed Cedros Crossing project, and certified the final environmental impact report for the project. On April 28, 2008, the city council held a hearing to consider the developers' request for various permits and approval of a tentative subdivision map. After the hearing, the city council voted to direct the developers to redesign the project. It found the submitted design was inconsistent with certain local zoning and specific plan requirements.

This action caused the Cedros Crossing project to become financially infeasible because a $6 million grant was conditioned on approval of the project by April 30, 2008.

About two months later, on July 3, 2008, plaintiffs gave the City written notice that the City's failure to approve the project constituted a failure to implement the Housing Element and indicated that they intended to take formal legal action if the City did not amend and/or implement the Housing Element. In response, on August 27, 2008, the city council adopted resolution No. 2008-152, retaining outside defense counsel to represent the City in the challenge to the Housing Element.

More than one year later, on September 2, 2009, plaintiffs filed a complaint and petition for writ of mandate. As amended, the pleading asserted eight causes of action. In the first and second causes of action, plaintiffs alleged the City "failed to implement" its Housing Element by rejecting the initial Cedros Crossing proposal and failing to comply with Program 1 requirements. In the third cause of action, plaintiffs claimed the City failed to report its actions to the State Housing Department. The fourth cause of action alleged the City violated section 65589.5, the state's "Anti-NIMBY" (not in my backyard) law, by failing to implement the Housing Element and approve the Cedros Crossing project. In the fifth cause of action, plaintiffs claimed the City's application of its specific plan and zoning ordinance to the Cedros Crossing proposal violated the "Least Cost Zoning Law" (§ 65913 et seq.). The sixth cause of action alleged the City's failure to approve the Cedros Crossing proposal resulted in a failure to ensure the inclusion of affordable housing in the coastal zone, in violation of the Coastal Zone Act (§ 65590 et seq.). The seventh and eighth causes of action sought declaratory relief and issuance of a peremptory writ of mandate based on the substantive causes of action.

The City demurred to all causes of action. The City argued plaintiffs' claims were untimely. The City relied primarily on section 66499.37, which establishes a 90-day limitations period for claims challenging a public entity's actions "concerning a subdivision," including "the approval of a tentative map or final map." The City alternatively argued the claims were barred under the longer one-year limitations period in section 65009(d), applicable to certain housing element challenges brought in support of affordable housing. The City additionally urged the court to sustain the demurrer because plaintiffs failed to state a claim under substantive law.

In opposing the demurrer, plaintiffs argued the suit was governed by the one-year limitations period of section 65009(d) because it pertained to affordable housing and alleged violations of housing element law. Plaintiffs

argued the complaint (filed Sept. 2, 2009) was timely under section 65009(d) because under this subdivision, the one-year limitations period did not begin to accrue until "October 26, 2008, 60 days *after* the date [(Aug. 27, 2008)] on which the City Council took final action in response to [plaintiffs'] July 3rd notice of deficiencies." Plaintiffs also argued their allegations stated a cause of action under state housing element law because the City "should be made to answer for its utter failure to implement its Housing Element" by failing to approve the Cedros Crossing project and implement Program 1 to facilitate mixed-use projects, or amend its Housing Element to identify adequate sites or adopt a program to do so.

Following a hearing, the trial court sustained the City's demurrer without leave to amend. As to all causes of action, the trial court found section 66499.37 applied, and the claims were untimely because they were filed more than 90 days after the City took action on the Cedros Crossing project. In addition, the trial court held that the first, second, third, fifth, and sixth causes of action failed to state a claim under California law.

## DISCUSSION

### I. *Review Standard*

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650 [43 Cal.Rptr.3d 434].) In reviewing the complaint, we must assume the truth of all facts properly pleaded by the plaintiff and matters properly judicially noticed. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601].) However, we "do not assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed." (*Dutra v. Eagleson* (2006) 146 Cal.App.4th 216, 221 [52 Cal.Rptr.3d 788].) Additionally, we are not bound by the trial court's stated reasons supporting its ruling; we review the ruling, not its rationale. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433 [110 Cal.Rptr.3d 498].)

### II. *Overview of Plaintiffs' Claims*

The Legislature has declared "affordable housing [to be] 'a priority of the highest order' " and is a matter of " 'vital statewide importance.' " (*Fonseca, supra,* 148 Cal.App.4th at p. 1182; see § 65580, subd. (a).) To implement these objectives, the Legislature requires a local government's

general plan to include a housing element, which must contain policies to meet affordable housing goals. (§§ 65302, subd. (c), 65580, subd. (d), 65582, subd. (e), 65582.1, 65583; see *Fonseca, supra,* 148 Cal.App.4th at pp. 1182–1185.) California's housing element law is contained in article 10.6 of state land use law, beginning with section 65580.

A locality is required to submit its draft housing element to the State Housing Department. (§ 65585, subd. (b).) If the department finds the housing element substantially complies with housing element law, the housing element has a rebuttable presumption of validity. (§ 65589.3.) After the housing element is approved and adopted, the local government "must review its housing element periodically to evaluate the community's progress toward attainment of local and state housing goals and objectives" (*Black Property Owners Assn. v. City of Berkeley* (1994) 22 Cal.App.4th 974, 978 [28 Cal.Rptr.2d 305]), and the entity must revise the housing element "as appropriate" (§ 65588, subd. (b)). The statutes set forth a detailed schedule of mandated housing element review periods. (§ 65588, subd. (e).)

■ A housing element may be challenged by "any interested party" through a traditional mandamus action under Code of Civil Procedure section 1085. (§§ 65587, subds. (b), (d)(2), 65583, subd. (h).) The court's review "shall extend to whether the housing element . . . substantially complies with the requirements of [the housing element law]." (§ 65587, subd. (b).) "Judicial review of a housing element for substantial compliance with the statutory requirements does not involve an examination of the merits of the element or of the wisdom of the municipality's determination of policy." (*Black Property Owners Assn. v. City of Berkeley, supra,* 22 Cal.App.4th at p. 980.) Instead, it requires a determination whether the housing element includes the statutory requirements. (*Buena Vista Garden Apartments Assn. v. City of San Diego Planning Dept.* (1985) 175 Cal.App.3d 289, 298 [220 Cal.Rptr. 732].)

In this case, plaintiffs alleged that although the Housing Element was proper when it was initially adopted and approved in 2006 and 2007, the predicate for its validity under state law was the condition that the City would approve development on Site 8 that would include 13 units of affordable housing for lower income households. Plaintiffs claimed the City's April 28 decision that the Cedros Crossing project violated the City's zoning ordinance and specific plan meant that the Housing Element no longer identified adequate sites to meet the City's share of regional housing needs. Plaintiffs further alleged that the Housing Element no longer complied with state law because the City's actions demonstrated it would not approve a project at that site that would contain sufficient affordable housing to meet the City's needs. Based on these allegations, plaintiffs claimed the City violated the housing element law and numerous other land use statutes.

The City countered that nothing in the housing element law required the City to approve a specific housing project or to implement selected programs identified in its Housing Element. It argued there is no authority supporting plaintiffs' theory that a housing element, facially valid upon its enactment, becomes "noncompliant" over time by a City's purported failure to approve a specific project or implement selected programs. The City further argued that each of plaintiffs' additional causes of action had no legal basis.

As explained below, we do not resolve these contentions because plaintiffs' complaint was untimely. We thus do not determine the validity of the court's conclusion that plaintiffs' claims do not state a cause of action under California law.

### III.   *Statute of Limitations*

Plaintiffs contend the court erred in concluding the action was untimely because it was filed beyond the 90-day limitations period of section 66499.37. They argue the one-year limitations period set forth in section 65009(d) governs the lawsuit because the action was brought in support of affordable housing and pertained to the implementation of the City's Housing Element. However, even if we assume plaintiffs are correct that section 65009(d) is the applicable statute of limitations, the suit is still untimely.

■ Generally, under section 65009, actions to challenge governmental planning and zoning decisions are governed by a 90-day limitations period. (See *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 765–766 [16 Cal.Rptr.3d 404, 94 P.3d 538].) The purpose of this "short" statutory period is to provide certainty to property owners and avoid the chilling effect of potential legal challenges on local planning and zoning decisions. (*Ibid.*)

Section 65009(d) creates an exception to this 90-day rule, establishing a one-year limitations period applicable to actions "brought in support of or to encourage or facilitate" affordable housing (§ 65009(d)(1)) if the action is brought with respect to certain governmental actions, including specified actions taken pertaining to housing element law (§ 65009(d)(2); see *Travis v. County of Santa Cruz, supra*, 33 Cal.4th at p. 766, fn. 1). However, the goal of providing certainty for property owners and local governments applies equally to this subdivision. (See *Urban Habitat Program v. City of Pleasanton* (2008) 164 Cal.App.4th 1561, 1573 [80 Cal.Rptr.3d 300] (*Urban Habitat*).) Thus, the Legislature established a specific time period for the government entity to consider an objection based on affordable housing concerns and established strict accrual deadlines governing the commencement of this one-year limitations period. (§ 65009(d)(2).)

Specifically, the second paragraph of section 65009(d)(2) states in relevant part: "A cause of action brought pursuant to [section 65009(d)] shall not be maintained until 60 days have expired following notice to the city or clerk of the board of supervisors by the party bringing the cause of action, or his or her representative, specifying the deficiencies of the general plan, specific plan, or zoning ordinance. A cause of action brought pursuant to [section 65009(d)] shall accrue 60 days after notice is filed or the legislative body takes a final action in response to the notice, whichever occurs first."

In their complaint, plaintiffs alleged: "On July 3, 2008, Petitioners, through counsel, gave the City written notice that [city council's] failure to approve the [Cedros Crossing] Project and [i]mplement Program 1 had rendered its Housing Element invalid." They further alleged the City responded to this notice by adopting "Resolution 2008-152, on August 27, 2008, retaining outside defense counsel to represent them in any challenge to the City's Housing Element." Plaintiffs also requested judicial notice of certain City documents showing the July 3 notice was considered in closed sessions of the city council on July 9 and August 27, 2008, resulting in the August 27 resolution. In the proceedings below and on appeal, plaintiffs concede that the City's August 27, 2008 resolution was a "final action" in response to their notice within the meaning of section 65009(d)(2).

■ A cause of action under section 65009(d) accrues "60 days after notice is filed or the legislative body takes a final action in response to the notice, *whichever occurs first*." (§ 65009(d)(2), italics added.) Under plaintiffs' admitted facts, the City's "final action" on their notice occurred *before* "60 days after notice [was] filed." (*Ibid.*) In their amended complaint, plaintiffs alleged they gave notice of their challenge on July 3, 2008. In their appellate briefs, they argue that the July 3 notice was not "filed" (stamped) until July 8, 2008. However, regardless which of these dates applies, the "60 days after" date would be no earlier than September 1, 2008, or September 6, 2008, both of which are *after* the date of the final action (Aug. 27, 2008). Therefore, plaintiffs' claims accrued on the date of the City's final action, August 27, 2008.

Once a cause of action has accrued, "[a]n action or proceeding *shall* be commenced and the legislative body served within one year . . . ." (§ 65009(d), italics added.) Thus, under section 65009(d), the limitations period in this case ended on August 28, 2009. However, plaintiffs did not file their complaint until September 2, 2009. Therefore the action was untimely even assuming section 65009(d)'s one-year limitations period applied.

Plaintiffs assert several arguments in an attempt to avoid this result. These arguments are without merit.

First, plaintiffs contend that under section 65009(d), the statute does not begin to accrue until *60 days after* the City took "final action" on the notice. They base their argument on the grammatical construction of the following sentence of section 65009(d)(2): "A cause of action brought pursuant to this subdivision *shall accrue 60 days after* notice is filed *or* the legislative body takes a final action in response to the notice, whichever occurs first." (Italics added.) They argue that the "60 days after" phrase modifies *both* the "notice is filed" conduct and the "legislative body takes a final action" conduct. (*Ibid.*)

However, in construing a statute to determine legislative intent, we do not read statutory language in isolation or solely as a grammatical exercise. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].) Statutes must be interpreted in context, and must be read "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain its effectiveness." (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 440 [66 Cal.Rptr.3d 120]; see *Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 422 [112 Cal.Rptr.3d 482].) " ' "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." [Citation.]' " (*Torrey Hills Community Coalition v. City of San Diego* (2010) 186 Cal.App.4th 429, 440 [111 Cal.Rptr.3d 578].) "Thus, although we look first to the statutory language, we do not give the words a literal meaning if to do so would result in an absurd result that was not intended." (*Chaffee v. San Francisco Public Library Com.* (2005) 134 Cal.App.4th 109, 114 [36 Cal.Rptr.3d 1].)

Accepting plaintiffs' proposed interpretation of section 65009(d)(2) would violate these fundamental statutory interpretation principles because the statutory phrase "whichever occurs first" would become meaningless. If the accrual is not triggered until 60 days after the notice is filed *or* 60 days after the legislative body makes a final decision to deny the claim, the date the claimant files the notice *necessarily* will *always* be first. Because a notice must logically precede a rejection, 60 days from both actions would necessarily mean the notice date would always be first. Thus, there would be no need to include the "whichever occurs first" language. We cannot accept plaintiffs' proposed interpretation because it requires that we conclude a statutory phrase is superfluous. (See *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 22 [276 Cal.Rptr. 303, 801 P.2d 1054]; *Torrey Hills Community Coalition v. City of San Diego, supra*, 186 Cal.App.4th at p. 440; *Baldwin v. City of Los Angeles* (1999) 70 Cal.App.4th 819, 838 [83 Cal.Rptr.2d 178].)

■ Our interpretation is consistent with other portions of the statute, which indicate the Legislature established two alternative accrual dates in the event the legislative body takes no formal action on the notice. The preceding sentence in section 65009(d)(2) provides that a party does not state a cause of action under the subdivision "until 60 days have expired following notice" to the legislative body. (§ 65998(d)(2).) By creating this "no-lawsuit" time period, the Legislature intended to provide the public entity the full 60 days to consider the claim before the matter could be prematurely challenged in court. But the Legislature also wanted to provide certainty in the event the legislative body took no formal action in response to a notice during this 60-day period. Thus, the Legislature structured section 65009(d)(2) to provide that the accrual is triggered from the final action, but no later than 60 days from the date notice is given.

■ In support of their interpretation of the statute, plaintiffs rely on the *Urban Habitat* court's description of the "60 days after" language in section 65009(d)(2) as applying to the "final action" date as well as to the date the notice is filed. (*Urban Habitat, supra,* 164 Cal.App.4th at pp. 1571–1572.) However, the *Urban Habitat* court made this observation in its overview explanation of the statutory scheme and not with respect to any specific issue raised by the parties. (*Ibid.*) Thus, the court's statement is neither binding nor persuasive authority. (See *People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 [17 Cal.Rptr.3d 302, 95 P.3d 523] ["cases are not authority for propositions not considered"].) Further, to the extent the *Urban Habitat* court intended to suggest the 60-day extension applied to both actions, we decline to follow this conclusion as inconsistent with the language and purpose of the statute.

Plaintiffs also contend their action was timely based on their allegation that the City never "filed" their July 3 claim and instead merely stamped the claim "Received" on July 8, 2008. Plaintiffs submitted a copy of the stamped document as part of their judicial notice request below. However, as discussed, because the City denied the notice before the 60-day period terminated (regardless whether the notice/filing was on July 3 or July 8), the notice or filing date is not relevant for purposes of determining the accrual date in this case.

## IV. *Leave to Amend*

Plaintiffs alternatively contend the court erred in refusing to provide them leave to amend their complaint.

It is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows a reasonable possibility a defect in the complaint may be cured by amendment. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962,

970–971 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1387 [272 Cal.Rptr. 387].) A plaintiff has the burden to show in what manner the pleadings may be amended and how the amendments will change their legal effect. (*Careau & Co., supra,* 222 Cal.App.3d at p. 1388.)

The court did not abuse its discretion. Plaintiffs have not suggested, and there is nothing in the record supporting, a basis for concluding plaintiffs could amend the complaint to render the action timely.

■ In seeking leave to amend, plaintiffs argue the policies underlying the statute of limitations "need to be balanced with the policy favoring disposition of cases on the merits rather than on procedural grounds," particularly in a case such as here where the plaintiffs are seeking to uphold the public policy of encouraging localities to promote affordable housing. However, a rule of narrowly interpreting statutes of limitation does not apply when the statute reflects a specific policy judgment by the Legislature regarding the need for the particular limitations period. (See *Maginn v. City of Glendale* (1999) 72 Cal.App.4th 1102, 1109 [85 Cal.Rptr.2d 639].)

■ Section 65009's one-year deadline is substantially less than the general three-year period for claims alleging statutory violations (Code Civ. Proc., § 338, subd. (a)), and reflects the Legislature's intent to provide certainty in the development process, even with respect to affordable housing challenges. (See *Travis v. County of Santa Cruz, supra,* 33 Cal.4th at p. 765; *Urban Habitat, supra,* 164 Cal.App.4th at p. 1579.) Moreover, section 65009, subdivision (e) provides: "Upon the expiration of the time limits provided for in this section [(including § 65009(d))], *all persons are barred from any further action or proceeding.*" (Italics added.) Given this strict statutory scheme, there is no basis upon which an exception can be made.[3]

## DISPOSITION

Judgment affirmed. The parties to bear their own costs.

Huffman, Acting P. J., and O'Rourke, J., concurred.

On June 13, 2011, the opinion was modified to read as printed above.

---

[3] We grant plaintiffs' unopposed request that we take judicial notice of certain legislative materials underlying the enactment of section 65009.