Filed 12/17/15  Curiel-Aguirre v. County of Imperial CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MELISSA CURIEL-AGUIRRE, | D066366 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU 07892) |
| COUNTY OF IMPERIAL, | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed in part and reversed in part.

Grady and Associates, Dennis M. Grady and Garrett A. Smee for Plaintiff and Appellant.

McCormick & Mitchell, John P. McCormick, Konrad M. Rasmussen and Nicole Barvie for Defendants and Respondents.

In this lawsuit, plaintiff Melissa Curiel-Aguirre alleged three causes of action against both defendants — the County of Imperial (County), her former employer, and

Michael Ojeda, one of her former employment supervisors — and an additional six causes of action against only the County. All of the causes of action assert statutory employment-related claims based on alleged discrimination, harassment and retaliation.

The trial court entered a judgment in favor of the County and Ojeda after sustaining without leave to amend demurrers to each of the nine causes of action. We affirm as to the eight state law causes of action and reverse as to the one federal law cause of action.

I.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Our recitation of the facts assumes the truth of the properly pleaded or implied factual allegations, as well as matters which may be judicially noticed.[2] (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

_____

[1]    For ease of reading, we will not include specific dates in this part of the opinion. Because there are issues relating to statutes of limitation, some of the dates are potentially outcome determinative, and we will set forth those specific dates at part II.C., *ante*.

[2]    On our own motion, we take judicial notice of the attachments to the declaration of Daniel Esparza, filed in the superior court on January 9, 2014, which consist of two sets of communications between the California Department of Fair Employment and Housing (DFEH) and either Curiel-Aguirre or the County — one set during the October 2011 time period and another set during the November 2012 time period. (Evid. Code, §§ 452, subd. (c) [courts may take judicial notice of "records of state administrative agencies" (*El Rancho Unified School Dist. v. National Education Assn.* (1983) 33 Cal.3d 946, 950, fn. 6 [records of proceedings before Public Employees Relations Board])] such as the DFEH; § 459, subd. (a) [reviewing court may take judicial notice of matter specified in Evid. Code, § 452]; § 459, subd. (a)(1) [reviewing court shall take judicial notice of matters properly noticed by the trial court].)

Curiel-Aguirre, who is a female with stress and respiratory (allergy) disabilities, worked for the County in the Department of Social Services for approximately 10 years before her constructive termination (i.e., she quit) in November 2011.

In and before November 2010, the office in which Curiel-Aguirre and Ojeda worked "was permeated with sexual advances by male supervisors towards females," and there was "an atmosphere that females had to comply with [these advances] and obtain favoritism or not comply with [these advances] and face retaliation" by the male supervisors. Compared to those who complied with the sexual advances, women who did not comply received poor reviews and undeserved criticism. Ojeda had made sexual advances toward Curiel-Aguirre, all of which she refused. In retaliation, in November 2010 Ojeda moved Curiel-Aguirre's work space next to a large filthy air vent.

Within a month, Curiel-Aguirre experienced severe allergic reactions which she attributed to her proximity to the vent. Curiel-Aguirre brought this health issue to the attention of her direct supervisor, who did nothing. Curiel-Aguirre's allergy condition worsened, and Curiel-Aguirre began to experience "severe stress" due to the hostile work environment, Ojeda's retaliation and the County's refusal to accommodate her disability (allergies) by moving her physical location within the office. Curiel-Aguirre then raised the issue of the refusal to accommodate the disability with two additional supervisors. The first supervisor told Curiel-Aguirre that she (the supervisor) would look into the situation, but did nothing; and the second supervisor explained to Curiel-Aguirre that she "had to go through the 'chain of command,' " although he did arrange to have the vent cleaned.

3

Curiel-Aguirre's allergy and stress disabilities worsened, and she took a medical leave of absence in September 2011.[3] When she returned to work in October 2011, the County accommodated her respiratory disability by moving her work station. Prior to this time, there had been no interactive process to accommodate the respiratory disability — which contributed further to Curiel-Aguirre's stress disability.

Prior to returning to work, in mid-October 2011 Curiel-Aguirre filed an administrative complaint with the DFEH (October 2011 DFEH Administrative Complaint). She requested authorization to file a lawsuit, and within two weeks the DFEH issued Curiel-Aguirre a right-to-sue notice advising her that any civil action based on the facts alleged in the October 2011 DFEH Administrative Complaint had to be filed within a year of October 31, 2011 (October 2011 DFEH Notice). Curiel-Aguirre did not file a court action within that time period.

Curiel-Aguirre had returned to work only upon the threat of termination of her employment, and the accommodation did nothing to alleviate either the stress, the ongoing hostile work environment, or the retaliation for Curiel-Aguirre's continued refusal to respond favorably to Ojeda's sexual advances. In fact, the County never took any action either to accommodate or to engage in the interactive process of accommodating Curiel-Aguirre's stress disability. Upon her return to work, Curiel-Aguirre learned that a female co-worker who was having an affair with Ojeda had been

_____

[3]    As we explain *post*, there is an issue whether this leave was taken under the state law, federal law, or both.

4

and was still "spreading false statements that [Curiel-Aguirre] had been 'confined' to a 'crazy house' or words to that effect."[4]

Unable to continue working under these conditions, Curiel-Aguirre quit approximately six weeks later at the end of November 2011. She considers the adverse treatment described above to be a substantial factor in the constructive termination of her employment with the County.

Just short of one year after leaving the County's employ, in November 2012 Curiel-Aguirre filed a second administrative complaint with the DFEH (November 2012 DFEH Administrative Complaint). She again requested authorization to file a lawsuit, and again the DFEH immediately issued a right-to-sue notice advising Curiel-Aguirre that she had one year within which to file a civil action based on the facts alleged in the November 2012 DFEH Administrative Complaint (November 2012 DFEH Notice).

Prior to the expiration of the one-year deadline contained in the November 2012 DFEH Notice, in October 2013 Curiel-Aguirre filed the underlying action naming as defendants the County and Ojeda (together, Defendants). In the original complaint, Curiel-Aguirre asserted eight causes of action — three against Defendants, and an additional five against only the County. Defendants demurred, and in December 2013 Curiel-Aguirre voluntarily amended her complaint.

---

[4]     Curiel-Aguirre believes that discovery will reveal that Ojeda and/or other managing agents motivated and encouraged the coworker to make these false statements "because of" Curiel-Aguirre's gender, disabilities, taking leave and achieving the accommodation of her respiratory disability.

In the first amended complaint (FAC), Curiel-Aguirre alleged three causes of action against Defendants and an additional six causes of action against only the County. Based on alleged violations of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA)),[5] Curiel-Aguirre asserted claims (1) against both Defendants for gender-based harassment and a hostile work environment due to sexual harassment; and (2) against the County for gender-based discrimination, disability discrimination, failure to accommodate disabilities, and failure to engage in the interactive process of accommodation. Based on alleged violations of the Moore-Brown-Roberti Family Rights Act (§ 12945.2 (FRA), which is among the unlawful practices included in FEHA, § 12940 et seq.) and the Family Medical Leave Act (29 U.S.C. § 2601 et seq. (FMLA)), Curiel-Aguirre alleged causes of action against the County for interfering with her medical leave and discriminating and retaliating against her for her request for and use of medical leave.

Defendants demurred to the FAC. As to all causes of action, Defendants argued that the applicable statute of limitations barred the claims. The County also argued that the FMLA cause of action was barred by Curiel-Aguirre's failure to have presented a claim under the California Tort Claims Act (§ 900 et seq.) and by Curiel-Aguirre's failure to have alleged an actionable violation of the FMLA. Following full briefing and oral argument, the court granted Defendants' request for judicial notice and sustained the

_____

5    Further statutory references are to the Government Code unless indicated otherwise.

6

demurrers in their entirety — without leave to amend as to the FEHA (including FRA) causes of action and with leave to amend as to the FMLA cause of action. The court ruled that the FEHA (including FRA) causes of action were barred by the one-year statute of limitations and the FMLA cause of action did not adequately plead a violation of the FMLA.

Curiel-Aguirre filed a second amended complaint (SAC) in which she realleged the same nine causes of action and asserted additional allegations in support of the claim under the FMLA to state a cause of action.[6] In response, Defendants (1) moved to strike the FEHA and FRA causes of action on the basis the court had sustained the prior demurrers to these causes of action without leave to amend, (2) demurred to the FEHA and FRA causes of action on the same grounds Defendants asserted in their demurrers to the FAC, and (3) the County demurred to the FMLA cause of action on the grounds it was barred by the applicable statute of limitations and it failed to allege a cognizable violation of the FMLA. Following full briefing and oral argument, the court granted the motion to strike and sustained the demurrer to the FMLA cause of action without leave to amend on the basis Curiel-Aguirre failed to state a cause of action under the FMLA.

Having sustained without leave to amend demurrers to all of the causes of action (eight in the FAC under the FEHA and one in the SAC under the FMLA), the court filed

---

6      As to the eight FEHA causes of action to which the court sustained the demurrers without leave to amend, Curiel-Aguirre alleged in the SAC that she included them only to ensure they were preserved for appeal. In addition, Curiel-Aguirre incorporated into her FMLA cause of action the allegations of discrimination and harassment contained in seven of the FEHA causes of action.

7

a judgment in favor of Defendants and against Curiel-Aguirre. In July 2014, Curiel-Aguirre timely appealed from the judgment.

## II.

## DISCUSSION

As to the FEHA and FRA claims, Curiel-Aguirre argues that the trial court erred in sustaining the demurrers without leave to amend, because *some* of the conduct on which she bases these causes of action occurred within the limitations period. Thus, her argument continues, she should be entitled to proceed either based on the later conduct alone or, alternatively, based on a continuous course of conduct that began outside the limitations period and continued into the limitations period. As to the FMLA claim, Curiel-Aguirre argues that because the medical leave she took in September 2011 was at least in part under the FMLA, she properly alleged a cause of action under the FMLA.

As we explain below, we affirm as to the state law FEHA (including FRA) causes of action, reverse as to the federal law FMLA cause of action, and deny leave to amend.

A. *Standard of Review*

In reviewing the ruling on a demurrer, "we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); see Code Civ. Proc., § 430.30, subd. (a).) In so doing, "[w]e independently review the sustaining of a demurrer and determine de novo

8

whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense." (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81.) We are not bound by the trial court's stated reasons; "we review the ruling, not its rationale." (*Haro v. City of Solana Beach* (2011) 195 Cal.App.4th 542, 549 (*Haro*).)

Where, as here, a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank*, *supra*, 39 Cal.3d at p. 318.) In this regard, "[t]he burden of proving such reasonable possibility is squarely on the plaintiff" (*ibid.*), which may be established on appeal for the first time (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153-1154). However, where the nature of the plaintiff's claim is clear and under substantive law no liability exists, a court does not abuse its discretion in denying leave to amend, "because no amendment could change the result." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459.)

B.      *FEHA's Statutes of Limitations*

The FEHA contains two separate statutes of limitation that are applicable to the arguments on appeal — section 12960, subdivision (d), which is applicable to the filing of an administrative complaint with DFEH, and section 12965, subdivision (b), which is applicable to the filing of a civil lawsuit in the superior court. (*Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402 (*Acuna*).)

9

1.    *Section 12960, Subdivision (d) — DFEH Administrative Complaint*

Subject to exceptions inapplicable here, section 12960 requires that an employee who intends to file suit under the FEHA must first exhaust the administrative remedies available by filing a complaint with the DFEH within "one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." (§ 12960, subd. (d); see *Acuna*, *supra*, 217 Cal.App.4th at p. 1412.)

The parties here dispute the applicability of an equitable tolling doctrine applicable to continuing violations of FEHA. As our Supreme Court has explained, under the " 'continuing violation doctrine,' " the one-year limitations period in section 12960, subdivision (d) may be tolled where the employer engaged in a series of continuing and related FEHA violations and at least one of those violations occurred within the one-year period. (*Richards v. CH2M Hill*, *Inc*. (2001) 26 Cal.4th 798, 801, 823 (*Richards*).) In *Richards*, a disabled employee who sought accommodation for her disability over a five-year period received "mixed signals [from the employer] on her accommodation requests throughout the period." (*Id.* at p. 824.) The employee did not file a DFEH administrative complaint at the time the employer first refused the accommodation, and the issue on appeal was when the limitations period began — at the time the employer first refused to accommodate the employee's disability or at some later date based on the employer's continuing refusal to accommodate the disability. (*Id.* at p. 812.)

From *Richards* and *Acuna* we discern that, upon a showing of a continuing pattern of wrongful conduct that occurs partly within the statutory one-year period and partly

10

outside of the statutory period, the limitations period does not begin to accrue until "the employee is on notice of the violation of his or her rights *and* on notice that 'litigation, not informal conciliation, is the only alternative for the vindication of his or her rights.' " (*Acuna*, *supra*, 217 Cal.App.4th at p. 1412, quoting from *Richards*, *supra*, 26 Cal.4th at p. 823; see *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1059 (*Yanowitz*) ["the FEHA statute of limitations begins to run when an alleged adverse employment action acquires some degree of permanence or finality"].)  More specifically, *Richards* holds that the limitations period for filing a DFEH administrative complaint of discrimination is tolled if an employer engages in ongoing violations of an employee's FEHA rights and the employer's actions over time:  (1) are "sufficiently similar in kind"; (2) "occurred with reasonable frequency"; and (3) "have not acquired a degree of permanence."  (*Richards*, at p. 823.)

In this latter regard, " 'permanence' in the context of an ongoing process of accommodation of disability, or ongoing disability harassment" means "that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile."  (*Richards*, *supra*, 26 Cal.4th at p. 823.)[7]  One of the reasons for requiring permanence is to toll section 12960, subdivision (b)'s one-year limitations period for

---

[7]    Whereas *Richards* involved only FEHA claims of disability harassment and disability accommodation, the continuing violation doctrine also applies to FEHA claims alleging retaliation.  (*Yanowitz*, *supra*, 36 Cal.4th at pp. 1058-1059; see *Acuna*, *supra*, 217 Cal.App.4th at p. 1413.)

11

filing a DFEH administrative complaint during the time in which the employee and employer are engaged in informal efforts to resolve the employer's alleged FEHA violations.  (*Richards*, at pp. 822-823; *Acuna*, *supra*, 217 Cal.App.4th at p. 1414.)

  2.  *Section 12965, Subdivision (b) — Superior Court Civil Complaint*

Once the DFEH issues a right-to-sue notice, the aggrieved party may file a civil action in the superior court "within one year from the date of that notice."  (§ 12965, subd. (b); see *Acuna*, *supra*, 217 Cal.App.4th at p. 1413.)  Subject to exceptions inapplicable here, this is a "*strict* 'one-year statute of limitations, commencing from the date of the right-to-sue notice by the [DFEH].' "  (*Acuna*, at p. 1413, quoting from § 12965, subd. (d), italics added.)

C.  *Summary of Relevant Dates for FEHA Causes of Action*

Because of the various arguments related to statutes of limitations and potentially ongoing statutory violations under the FEHA, we list the following specific dates and expand on some of the details for certain of the relevant events introduced *ante*:

In and before November 2010:  Ojeda sexually harassed Curiel-Aguirre and retaliated against her for responding unfavorably.

November 2010:  Ojeda moved Curiel-Aguirre's work station to a location "next to a large, filthy vent."

December 2010:  Curiel-Aguirre experienced severe allergic respiratory reactions after relocating her workspace next to the vent.

12

September 9, 2011 – October 10, 2011:  Curiel-Aguirre took medical leave due to her respiratory and stress disabilities.  She returned to work "upon threat of termination" of her employment.

October 10, 2011:  The County accommodated Curiel-Aguirre's respiratory disability by moving her workspace away from the vent.

October 12, 2011:  Curiel-Aguirre signed (and filed on Oct. 17, 2011) the October 2011 DFEH Administrative Complaint, in which she explicitly states that she "wish[es] to pursue this matter in court" and "request[s] that the [DFEH] provide a right-to-sue notice."  Substantively, Curiel-Aguirre alleged that as of "November 2010 and continuing," she was "harassed" and "denied accommodation" based on her "sex" and "physical disability," which she described in detail on three-fourths of one page of single-spaced type.  Curiel-Aguirre averred that the most recent date of discrimination was October 10, 2011.  The October 2011 DFEH Administrative Complaint concludes as follows:  "My stress disability, due to Mr. Ojeda's continued presence in the workplace and permeation of the workplace with hostile sexual tension, continues.  [¶]  I believe that on a continuing basis I have been unlawfully mistreated in violation of the [FEHA] and other laws."

October 31, 2011:  The DFEH closed the matter without investigation because Curiel-Aguirre had requested an immediate right-to-sue notice, issuing Curiel-Aguirre the October 2011 DFEH Notice and advising her that any court action under the FEHA must be filed before October 31, 2012.

November 28, 2011:  Curiel-Aguirre quit her job at the County.

13

November 20, 2012: Curiel-Aguirre filed the November 2012 DFEH Administrative Complaint, again affirmatively requesting a right-to-sue notice because she wanted to pursue the matter in court. Curiel-Aguirre alleged that on or before November 28, 2011 (the date she resigned), she was denied a good faith interactive process, denied family care or medical leave, denied a reasonable accommodation, sexually harassed, subjected to a hostile work environment, retaliated against for protesting these conditions, and ultimately forced to quit. The accompanying statement of reasons for the discrimination was a *verbatim* copy of detailed description that accompanied Curiel-Aguirre's October 2011 DFEH Administrative Complaint (which is repeated almost verbatim in the three complaints in this action). The only differences are in the concluding sentences, which provide (italics added to indicate changes and additions): "My stress disability, due to Mr. Ojeda's continued presence in the workplace and permeation of the workplace with hostile sexual tension, *continued unabated*.[8] I believe that I was unlawfully mistreated on a continuing basis in violation of the [FEHA] and other laws. *Finally, I could no longer continue to work under the conditions as I have described them above. I felt as though my hands were tied and having no other recourse, I quit. My employment ended on November 28, 2011. Such action was taken because I could not continue to submit myself to work under such conditions, in violation of the [FEHA] and other laws*." As before, the DFEH closed the matter without investigation because Curiel-Aguirre requested an immediate right-to-sue notice, issuing

---

8       The October 2011 DFEH Administrative Complaint said "continues."

14

Curiel-Aguirre the November 2012 DFEH Notice and advising her that any court action under the FEHA must be filed before November 20, 2013.

October 10, 2013:  Curiel-Aguirre filed the underlying civil lawsuit.

D.    *Applying the Statutes of Limitations to the FEHA Causes of Action*

On appeal, Curiel-Aguirre argues that all of her FEHA causes of action were timely filed on October 10, 2013, based on the November 2012 DFEH Notice, which required the filing of a civil action on or before November 20, 2013.  In so arguing, Curiel-Aguirre relies on the continuing violation doctrine.

1.    *The Trial Court Properly Sustained the Demurrers to the FEHA Causes of Action Without Leave to Amend*

Despite Curiel-Aguirre's expressly stated desire "to pursue this matter in court" in the October 2011 DFEH Administrative Complaint and the DFEH's immediate issuance of the October 2011 DFEH Notice based on this desire, Curiel-Aguirre did not file suit by October 31, 2012 — the limitations period contained in the October 2011 DFEH Notice. Instead, after receiving the October 2011 DFEH Notice, Curiel-Aguirre continued working at the County for only a month and quit on November 28, 2011.  More than 11 months later, in November 2012 Curiel-Aguirre filed the November 2012 DFEH Administrative Complaint, in which she asserted detailed factual allegations that are *identical* to the factual allegations that she submitted with the October 2011 DFEH Administrative Complaint.  Stated differently, *Curiel-Aguirre did not allege any new or different facts in 2012 than she did in 2011*.

15

After receiving the November 2012 DFEH Notice, Curiel-Aguirre waited another 11 months before she filed the underlying civil action on October 10, 2013 — which was within the one-year limitations period provided in the November 2012 DFEH Notice.

The trial court sustained the demurrers to all of the FEHA claims (which includes the FRA cause of action) based on Curiel-Aguirre's failure to have filed her action within one year of the *October 2011 DFEH Notice* as required by section 12965, subdivision (b).

On appeal, Curiel-Aguirre relies on the timeliness of the filing of her action under the *November 2012 DFEH Notice*, arguing for application of the continuing violation doctrine to save an otherwise untimely-filed action. More specifically, Curiel-Aguirre argues that because at least some of the harassment, discrimination and retaliation occurred during November 2011 (i.e., during the month after the October 2011 DFEH Notice and before Curiel-Aguirre quit), the continuing violation doctrine allowed the November 2012 DFEH Notice to include the authorization to file claims based on facts back to 2010.

As we introduced *ante*, in order for the continuing violation doctrine to apply, *Richards* requires that Curiel-Aguirre establish a series of actions in the two DFEH administrative complaints that are "sufficiently similar in kind," "occurred with reasonable frequency," and "have not acquired a degree of permanence." (*Richards*, *supra*, 26 Cal.4th at p. 823.) Based on our application of *Richards* in *Acuna*, Curiel-Aguirre did not meet her burden to establish the requisite lack of permanence to apply the continuing violation doctrine. The standard for determining permanence is "when a

16

reasonable employee would understand that 'further efforts to end the unlawful conduct will be in vain.' " (*Acuna*, *supra*, 217 Cal.App.4th at p. 1414, quoting from *Richards*, at p. 823.)

In *Acuna*, plaintiff Acuna filed three DFEH administrative complaints against defendant SDG&E and received a right-to-sue notice in response to each: In 2006, she alleged racial discrimination, harassment and retaliation for having filed a workers' compensation claim; in 2007, she alleged disability discrimination for failure to accommodate a claimed disability; in 2008, after SDG&E terminated the employment, Acuna alleged various wrongful acts under FEHA, including retaliatory termination. (*Acuna*, *supra*, 217 Cal.App.4th at p. 1413.) Despite the two earlier right-to-sue notices in 2006 and 2007, Acuna did not file suit until late 2009, within the one-year limitations period following the 2008 right-to-sue notice. (*Id.* at pp. 1413-1414.)

With regard to the disability discrimination claim, we did not apply the continuing violation doctrine in order to save it from section 12960, subdivision (d)'s one-year limitations period. We ruled that, *based on Acuna's filing of the 2007 DFEH administrative complaint*, Acuna had understood that further efforts to end the unlawful conduct would have been " 'in vain.' " (*Acuna*, *supra*, 217 Cal.App.4th at p. 1414, quoting from *Richards*, *supra*, 26 Cal.4th at p. 823.) Without application of the continuing violation doctrine, Acuna's right to sue on the disability discrimination claim expired in 2008, one year after the 2007 right-to-sue notice. (§ 12965, subd. (b); *Acuna*, at p. 1415.)

In concluding that the continuing violation doctrine did not apply, we relied principally on the fact that Acuna understood that SDG&E's acts had reached a sufficient level of permanence to have resulted in the filing of the DFEH administrative complaint:

"In th[e 2007 DFEH] complaint, Acuna specifically alleged that SDG&E was refusing to accommodate her disability. *By retaining counsel and filing a DFEH complaint, Acuna manifested an understanding that further attempts at informal, rather than formal, resolution of the disability accommodation process would not be successful and were futile. Under these circumstances, the continuing violations doctrine is inapplicable.* Because Acuna did not file her lawsuit within one year of receiving the [2007] right-to-sue notice, her disability discrimination claim is time-barred." (*Acuna*, *supra*, 217 Cal.App.4th at pp. 1414-1415, italics added.)

Applying the above-quoted language in *Acuna* to the present case, we conclude that by filing the October 2011 DFEH Administrative Complaint *in which she indicated her express desire to pursue the matter in court*, Curiel-Aguirre "manifested an understanding that further attempts at informal, rather than formal, resolution . . . would not be successful and were futile." (*Acuna*, *supra*, 217 Cal.App.4th at p. 1415; see *Richards*, *supra*, 26 Cal.4th at p. 823.) Accordingly, as in *Acuna*, here "the continuing violations doctrine is inapplicable. Because [Curiel-Aguirre] did not file her lawsuit within one year of receiving the [October 2011 DFEH Notice], her [FEHA] claim[s are] time-barred." (*Acuna*, at p. 1415.) A renewed DFEH administrative complaint — especially one that does not allege any new facts — does not revive Curiel-Aguirre's right to pursue those claims.

We distinguish the procedural posture of the present case from the situation where one DFEH administrative complaint alleges a continuous course of conduct that includes acts that occurred more than a year earlier. (E.g., *Richards*, *supra*, 26 Cal.4th at pp. 810-

18

811.) There, in order to determine the scope of the continuing violation doctrine, the court must determine the degree of permanence based on whether the parties "continued to be engaged in an informal conciliation process to resolve the [employee's] grievances."[9] (*Richards*, at p. 824.) In contrast, here we are able to determine Curiel-Aguirre's view of the permanence of the County's allegedly unlawful actions by Curiel-Aguirre's affirmative request in her October 2011 DFEH Administrative Complaint to allow her to "pursue this matter in court." Curiel-Aguirre's allegations of a continuing violation do not overcome *her* express desire to sue in October 2011 — a desire that evidences *her* understanding that the Defendants' alleged violations of FEHA had achieved a level of permanence — where her November 2012 DFEH Administrative Complaint alleges *the identical* facts as in her prior administrative complaint for which a civil suit was time-barred.

Because the continuing violation doctrine does not apply to the allegations contained in Curiel-Aguirre's October 2011 DFEH Administrative Complaint, any FEHA claim based on those allegations had to be filed in court no later than October 31, 2012. Curiel-Aguirre did not file the underlying action until October 10, 2013. Accordingly, since the first through the seventh and the ninth causes of action are barred under section 12965, subdivision (b), the trial court properly sustained without leave to amend

---

[9] In *Richards*, for example, in order to determine the degree of permanence, the Supreme Court remanded the case for the trial court to consider the disputed facts regarding whether the parties continued to be engaged in an informal process to resolve the employee's grievances. (*Richards*, *supra*, 26 Cal.4th at p. 824.)

all of the FEHA causes of action in the FAC. (*Acuna*, *supra*, 217 Cal.App.4th at p. 1415.)

2. *The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend the FEHA Causes of Action*

Curiel-Aguirre did not suggest in her opening brief that the trial court abused its discretion in denying leave to amend to assert additional allegations regarding the FEHA causes of action. In her reply brief, Curiel-Aguirre argues that the FAC infers that she did not learn of the coworker's rumors[10] until after she (Curiel-Aguirre) returned to work in September 2011, thereby indicating that the rumors were not part of her October 2011 FEHA Administrative Complaint — for which the related FEHA claims are time-barred under section 12965, subdivision (b). Although she does not say so expressly, we understand the remainder of her argument to be that, since the rumors are part of the November 2012 FEHA Administrative Complaint, the FEHA claims based on the rumors are timely.

However, even if we accept as true the allegations regarding the coworker's rumors (as we must), Curiel-Aguirre expressly acknowledges that she is unaware of any evidence that either Ojeda or any supervisor or manager was aware of, let alone supported or encouraged, the rumors that were spread more than four years ago. In addition to this concession, Curiel-Aguirre does not suggest how, if at all, the County or

---

10    Once again, Curiel-Aguirre alleges in the FAC that, after she returned to work in October 2011, "a co-worker who was having an extramarital affair with Ojeda, having complied with his [sexual] advances, had been spreading false statements that [Curiel-Aguirre] had been 'confined' to a 'crazy house' or words to that effect." (Capitalization omitted.)

20

Ojeda might be liable for the actions of a nonsupervisory coworker.[11]  Accordingly, Curiel-Aguirre has not met her burden of establishing a reasonable possibility that she can amend the FEHA allegations in the FAC to state a cause of action.  (*Blank*, *supra*, 39 Cal.3d at p. 318.)

E.      *The FMLA Cause of Action*

Among the various stated purposes of the FMLA, Congress intended certain employees to be entitled "to take reasonable leave for medical reasons."  (29 U.S.C.A. § 2601(b)(2).)  The FMLA in part prohibits an employer's interference or discrimination with an employee's attempt to exercise a right provided in the FMLA.  (29 U.S.C.A. § 2615(a).)  In the SAC, Curiel-Aguirre alleges that she was an employee eligible for benefits under the FMLA; that the County is an employer subject to the requirements and proscriptions of the FMLA; that she "took FMLA leave" in September 2011 because of her illnesses and disabilities; and that she suffered an adverse employment action (discrimination and retaliation) for taking the FMLA leave.

On appeal, Curiel-Aguirre argues she sufficiently alleged that her September 2011 leave was taken pursuant to *both* the federal FMLA *and* the state workers' compensation laws, and that the two forms of leave are not mutually exclusive.  In response, Defendants

---

11      Later in her reply brief, Curiel-Aguirre tells us that she had asserted "on information and belief" that "the supervisor [Ojeda] fomented the remarks by the co-worker."  The record does not support this statement.  Neither the FAC nor the opposition to Defendants' demurrers to the FAC suggests — either affirmatively or on information and belief — that Ojeda "fomented" the coworker's rumor.  To the contrary, in the FAC Curiel-Aguirre explains that she has *no evidence* of Ojeda's or a managing agent's participation in the rumors.

raise a number of additional arguments which they contend support the trial court's ruling. (*Haro*, *supra*, 195 Cal.App.4th at p. 549 ["we review the ruling, not its rationale"].)

Because we conclude that Curiel-Aguirre met her burden of establishing trial court error in sustaining the demurrer to the FMLA cause of action and Defendants did not establish alternative grounds to support the court's ruling, we reverse that portion of the judgment dismissing the FMLA cause of action.

1.     *Curiel-Aguirre's Allegations Regarding Workers' Compensation Leave Do Not Preclude a Claim Under the FMLA*

In her original complaint, Curiel-Aguirre asserted only the eight causes of action described above under the FEHA; she did not assert a cause of action under the FMLA. Curiel-Aguirre alleged that as a result of her allergy and stress disabilities, "she had to leave the workplace on workers' compensation." Curiel-Aguirre repeated this allegation in her FAC and SAC.

Meanwhile, in her FAC and SAC, Curiel-Aguirre included a cause of action against Defendants for relief under the FMLA. In addition to the allegation quoted above regarding workers' compensation leave, in the operative SAC Curiel-Aguirre also alleged that she "took FMLA leave from approximately September 9, 2011 to approximately October 10, 2011." Curiel-Aguirre then alleged that "Defendants violated the FMLA by discriminating against [her] for taking leave under the FMLA . . . and by interfering with her use of such leave."

22

In sustaining the demurrer to this cause of action, the trial court orally explained that, in part, it was relying on *Dotson v. BRP U.S. Inc.* (7th Cir. 2008) 520 F.3d 703 (*Dotson*) for the proposition that, although workers' compensation leave and FMLA may run concurrently, the employer must give notice to that effect first; and because Curiel-Aguirre did not allege that the County provided such notice here, she is precluded from relying on the FMLA. We do not read *Dotson* as requiring such notice, and other than repeating the trial court's ruling, Defendants do not argue on appeal that lack of notice from the County precluded Curiel-Aguirre's reliance on the FMLA.

In *Dotson*, the employer allowed only 12 weeks of absence based on the minimum amount of leave mandated by the FMLA, and the issue was whether the employee could separate his federal FMLA leave from his state workers' compensation leave in order to maintain his job after taking more than 12 weeks of medical leave. (*Dotson*, *supra*, 520 F.3d at pp. 705-706, 708-709.) The Seventh Circuit ruled that the 12-week limit was valid, in part because the employer had provided the required notice that for purposes of its absenteeism policy the employer calculated workers' compensation leave concurrently with FMLA leave. (*Dotson*, at pp. 708-710; 29 C.F.R. § 825.702(d)(2) ["workers' compensation absence and FMLA leave may run concurrently (subject to proper notice and designation by the employer)"].) However, that ruling has no application here, where there is no issue about whether Curiel-Aguirre took more leave than the County allowed or the FMLA authorizes. In contrast to *Dotson*, here it is the employee (not the employer) asserting that the workers' compensation and FMLA leave may run

concurrently. Indeed, Defendants acknowledge the accuracy of the statement that worker's compensation leave and FMLA leave may run concurrently.

Nonetheless, citing *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, Defendants argue that because Curiel-Aguirre "admitted in the Complaint, FAC and SAC that she took *only* workers' compensation leave," she is bound by those prior admissions and is precluded from alleging the leave was also taken under the FMLA. (Italics added.) As *Deveny* explains, under the "sham pleading doctrine," in order to avoid a successful prior attack raised in a demurrer, a plaintiff is precluded from amending the complaint to omit the harmful allegation without sufficient explanation. (*Id.* at p. 425; see *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1189, fn. 1.) In relying on *Deveny* and the sham pleading doctrine, Defendants misrepresent the record. They cite no record reference for their statement, and our review of the record confirms that Curiel-Aguirre never alleged that she "*only*" took workers' compensation leave. In the original complaint and in the allegations in the FAC and SAC that precede the FMLA cause of action, Curiel-Aguirre alleged that the leave she took in September 2011 was workers' compensation leave; yet elsewhere in the amended complaints, Curiel-Aguirre also alleged that the leave was under the FMLA.[12] Given these allegations — and the acknowledgement by Defendants that the two forms of leave may run concurrently —

---

[12]    In paragraph 10 of the FAC and SAC, for example, Curiel-Aguirre alleged that the leave was under *both* workers' compensation *and* the FMLA.

24

Curiel-Aguirre is not precluded from alleging that she took her medical leave under both state (workers' compensation) and federal (FMLA) laws.

At this procedural juncture, we express no opinion as to either Curiel-Aguirre's ability to prove the allegations or the legal ramifications of such proof. Our ruling is only that the sham pleading doctrine does not preclude as a matter of law Curiel-Aguirre's allegations in the SAC regarding her September 2011 leave.

2.      *Curiel-Aguirre Adequately Pleaded an Adverse Action*

Defendants argue that the coworker's spreading of rumors is insufficient as a matter of law to support Curiel-Aguirre's alleged violation of the FMLA. Although we agreed with this contention in support of the demurrers directed to the FEHA causes of action, there we did not consider Curiel-Aguirre's allegations that the other forms of harassment and discrimination continued after Curiel-Aguirre returned from her leave in October 2011, *because for FEHA purposes those other forms of harassment and discrimination had achieved permanence prior to her leave*. (Pt. II.D.2., *ante*.) In contrast, *for purposes of the FMLA*, there is no issue of permanence (or statute of limitations).

Thus, we have considered Curiel-Aguirre's allegations that Defendants' discrimination and harassment continued *after* she returned to work *and* contributed to the retaliation in violation of the FMLA and conclude that they adequately plead an adverse action.

25

3. *The Statute of Limitations Does Not Bar the FMLA Cause of Action*

Curiel-Aguirre's claim under the FMLA is that Defendants violated 29 United States Code section 2615(a).[13] The statute of limitations for asserting a violation of this section is two years — or three years if the action is for a willful violation — after "the date of the last event constituting the alleged violation" for which the action is brought. (*Id.*, § 2617(c)(1) & (2).)

Defendants argue that because Curiel-Aguirre's employment with the County ended on November 28, 2011, and Curiel-Aguirre did not assert a claim under the FMLA until her FAC in December 2013, Curiel-Aguirre's cause of action under the FMLA is time-barred. We disagree.

First, in her SAC Curiel-Aguirre alleged that Defendants' discriminatory acts were *willful* violations of the FMLA. Thus, the three-year limitations period applies (29 U.S.C.A. § 2617(c)(2)), and Curiel-Aguirre's claims for discrimination under the FMLA are timely.

In addition, the FMLA cause of action is based on the same underlying facts as alleged in the FEHA causes of action — namely, the adverse treatment Curiel-Aguirre experienced in the workplace that resulted in her quitting. Thus, the filing of the FMLA cause of action in the FAC relates back to the filing of the original action in October 2013. (*Smeltzley v. Nicholson Manufacturing Co.* (1977) 18 Cal.3d 932, 934 ["an

---

13 "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." (29 U.S.C.A. § 2615(a)(1).) "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." (*Id.*, § 2615(a)(2).)

amended complaint relates back to the filing of the original complaint, and thus avoids the bar of the statute of limitations, so long as recovery is sought in both pleadings on the same general set of facts"].) Since the original complaint was filed less than two years after Curiel-Aguirre's employment with the County ended, none of the claims in Curiel-Aguirre's FMLA cause of action is barred by the statute of limitations.

4. *Curiel-Aguirre Pleaded a Statutory Cause of Action Under FMLA, Not a Common Law Cause of Action for Constructive Termination*

Defendants argue that the events alleged in the SAC — namely, the rumors spread by Curiel-Aguirre's coworker — cannot possibly support a claim for constructive termination. Constructive termination occurs "when the employer's conduct effectively forces an employee to resign." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1244 (*Turner*).) "Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation." (*Id.* at pp. 1244-1245.) In order to plead a constructive discharge, the former employee must allege "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." (*Id.* at p. 1251.)

Relying on *Turner*, Defendants emphasize that because the conditions giving rise to a constructive termination must be "extraordinary and egregious" or "unusually 'aggravated' or . . . 'continuous,' " Curiel-Aguirre's allegations related to the rumors from

27

the coworker are insufficient as a matter of law. (*Turner*, *supra*, 7 Cal.4th at pp. 1246, 1247.)

However, we need not consider the standards for pleading or proving constructive termination, since the cause of action pleaded by Curiel-Aguirre and under consideration here is for *a violation of the FMLA*, not for *a constructive termination of employment*. Indeed, Defendants demurred on the basis that the remaining cause of action in the SAC "fails to allege any violation of the [FMLA] and therefore fails to state facts sufficient to constitute a cause of action." Whether the Defendants' alleged violations of the FMLA *resulted in a constructive termination* is irrelevant to the determination whether *Defendants violated the FMLA*.

5.      *Curiel-Aguirre Adequately Pleaded Causation*

Defendants argue that because Curiel-Aguirre failed to plead that County management undertook certain acts *as a result* of Curiel-Aguirre taking FMLA leave, Curiel-Aguirre did not adequately plead causation. We disagree.

First, Defendants' failure to cite the record on appeal or legal authority is fatal to their argument. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116; Cal. Rules of Court, rule 8.204(a)(1)(C).) Moreover, substantively Defendants ignore the following causation allegation in the SAC, which is sufficient: "As a proximate result of Defendants' violation of [Curiel-Aguirre's] rights as alleged herein [under the FMLA], [Curiel-Aguirre] has suffered and continues to suffer substantial losses including lost earnings, bonuses, . . . all to [her] detriment in an amount according to proof."

28

## III.

## DISPOSITION

The trial court erred in sustaining without leave to amend the demurrer to the FMLA cause of action in the SAC. In all other respects, Curiel-Aguirre did not meet her burden of establishing reversible error. Accordingly, the judgment is reversed in part and affirmed in part. The parties shall bear their respective costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3) & (5).)

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.